PERKINS COIE LLP
Geoffrey L. Robinson, Bar No. 112997
GRobinson@perkinscoie.com
Barbara J. Schussman, Bar No. 142352
BSchussman@perkinscoie.com
Marc R. Bruner, Bar No. 212344
MBruner@perkinscoie.com
Alan H. Murphy, Bar No. 262844
AMurphy@perkinscoie.com
505 Howard Street, Suite 1000
San Francisco, CA  94105-3204
Telephone:  415.344.7000
Facsimile:  415.344.7050

Attorneys for Plaintiff
BOARD OF TRUSTEES OF LELAND
STANFORD JUNIOR UNIVERSITY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>COUNTY OF SANTA CLARA and SANTA CLARA COUNTY BOARD OF SUPERVISORS,<br><br>　　　　　　　Defendants. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

**NATURE OF ACTION**

1. Plaintiff, the Board of Trustees of Leland Stanford Junior University ("Stanford" or "Stanford University"), brings this action for declaratory and injunctive relief against the County of Santa Clara ("County") and its Board of Supervisors to challenge the County's Ordinance No. NS-1200.368 ("Ordinance") adopted on September 25, 2018. The Ordinance is codified in the Santa Clara County Ordinance Code, at Title C, Appendix I (Zoning), Article 4, Chapter 4.20, Section 4.20.130.

2. The Ordinance – which requires that a percentage of housing units constructed by Stanford University within the unincorporated area of the County satisfy affordable housing specifications – is one of two County ordinances that impose affordable housing requirements *exclusively* on Stanford. (The second County ordinance, which imposes an affordable housing impact fee on Stanford's academic development, will be the subject of a separate proceeding and is not being challenged as part of this action.)

3. The County has determined that there is a severe shortage of affordable housing throughout the County and the region. The County has explained that the supply of affordable housing has been a growing issue of regional concern since the 1960s, as the area has changed from an agricultural focus to a technology and employment center.

4. The County prepared a countywide study to examine the affordable housing impacts from development of new housing, which concluded that residential development throughout the unincorporated area of the County increases the demand for affordable housing.

5. Yet, through its Ordinance, the County has impermissibly targeted Stanford to bear the burden alone of addressing the countywide affordable housing problem, even though the County's own analyses rest on the premise that all new housing development under the County's land use jurisdiction contributes to this longstanding problem. The County has intentionally imposed affordable housing requirements only on Stanford's residential development, and not on any other similarly-situated residential development within the County's land use authority.

6. Stanford University provides hundreds of housing units that the County counts as affordable to very low- and low-income residents in fulfilling the County's Regional Housing

Needs Allocation. It is irrational to single out Stanford University to require that it provide yet more income- and rent-restricted housing to address a countywide problem to which others also contribute. The Ordinance violates the Equal Protection clauses of the United States and California Constitutions and should therefore be set aside.

**JURISDICTION AND VENUE**

7.  This Court has subject matter jurisdiction over plaintiff's federal constitutional claims under 28 U.S.C. § 1331. Plaintiff's federal claims are authorized by 28 U.S.C. 1343(a); the Declaratory Judgment Act, 28 U.S.C. § 2201(a); and Federal Rules of Civil Procedure 57 and 65. Plaintiff's state law claims form part of the same case or controversy under Article III of the United States Constitution as plaintiff's federal claims.

8.  Venue is proper in the Northern District of California under 28 U.S.C. § 1391 because the events or omissions giving rise to this action occurred in this judicial district and because the County and the property at issue in this action are located there.

**INTRODUCTION**

9.  The County's Ordinance states that there is a severe shortage of affordable housing countywide and throughout the region. The Housing Element of the County's General Plan states that housing supply and affordability in the region have posed an issue of increasing importance since the earliest days of the region's transformation from the center of agricultural production known as the Valley of Heart's Delight, into the center of technology, innovation and employment known as Silicon Valley.

10. In 2015, the County initiated a countywide affordable housing study, with the stated purpose of collaborating with other local jurisdictions to assist in advancing a regional response. This effort led to a set of countywide nexus studies, based on the following two principles concerning development within the unincorporated area of the County (which represents the geographic area of the County's land use jurisdiction and authority): (a) all new residential development represents new households that consume goods and services, thereby generating new jobs, including lower wage jobs that create an increased demand for affordable

housing; and (b) all new commercial and industrial development generates new jobs, including lower wage jobs that similarly create an increased demand for affordable housing.

11. In presenting the completed studies to the Board of Supervisors in 2017, County staff indicated that if the County were to adopt a countywide affordable housing ordinance, Stanford University would be included in the ordinance's coverage. County staff further indicated that, if no countywide ordinance was adopted, affordable housing requirements for Stanford University would be addressed as part of the County's decision-making on the long-term development application that Stanford had submitted to the County for its campus in 2016.

12. The County and its Board of Supervisors did not proceed to propose or adopt any countywide ordinance establishing affordable housing requirements. Instead, on September 25, 2018, the County adopted two ordinances that imposed an extensive set of affordable housing requirements *only* on Stanford University, and not on any other residential or non-residential land owner within the unincorporated area of the County.

13. As the courts have observed, when local legislation is generally applicable to a large class of landowners, it typically is subject to the political controls and constraints of the democratic process. By contrast, the courts have explained that when land use requirements are imposed only a single landowner, they are more likely to elude these constraints and pose an increased risk for abuse.

14. The first of the County's two Stanford-only ordinances – which is the Ordinance that Stanford University challenges in this action – exclusively targets Stanford's new housing development. The Ordinance requires 16% of the new housing units constructed on Stanford land within the County's unincorporated area to meet specified affordability standards. No other new housing under the County's land use jurisdiction is required to provide any percentage of affordable housing, even though there are similarly situated properties to which the Ordinance does not apply that could be developed with new housing, which according to the County's studies would generate increased demand for affordable housing.

15. The second County ordinance exclusively targets Stanford University's academic development. This ordinance requires Stanford to pay an affordable housing impact fee of $68.50

-4-

for each new net square foot of academic space that Stanford builds on its campus after July 1, 2020.  No other commercial, retail, office, industrial or other non-residential development under the County's jurisdiction is required to pay any affordable housing impact fee, even though the County's studies show that Stanford University's academic development generates a lower demand for affordable housing per square foot as compared to commercial development by others.

16. The County's affordable housing impact fee ordinance is subject to distinct protest and challenge procedures and timelines under the California Mitigation Fee Act and therefore is not being challenged as part of this action, as the time to challenge the fee has not commenced. *See Ehrlich v. City of Culver City*, 12 Cal. 4th 854, 866 (1996) ("[T]he Legislature intended to require all protests to a development fee that challenge the sufficiency of its relationship to the effects attributable to a development project – regardless of the legal underpinnings of the protest – to be channeled through the administrative procedures mandated by the [Mitigation Fee] Act.").

17. During the period from 2000 to 2018, Stanford University provided over $26 million in affordable housing funds to the County.  During this period, Stanford also constructed over 800 affordable housing units in the County's unincorporated area.  The County has taken credit for these housing units as affordable to low- and very low-income households in the Housing Element of its General Plan for purposes of fulfilling the County's own legal obligations to plan for and approve affordable housing, pursuant to the requirements under State law administered by the California Department of Housing and Community Development.

18. The County's Ordinance impermissibly singles out Stanford University.  Through its ordinance, the County has intentionally imposed affordable housing requirements exclusively on housing development constructed by Stanford.  By contrast, the County has not imposed affordable housing requirements on any other new housing under the County's land use authority, even though the County's residential nexus study rests on the premise that all such housing development contributes to the countywide affordable housing problem that the County has identified.  The County has no rational basis for imposing affordable housing requirements only on Stanford University, and not on other residential development in the unincorporated area of the

County, which according to the County's own nexus studies generates demand for affordable housing.

19. The County's Ordinance violates the Equal Protection clauses of the United States and California Constitutions. Stanford University seeks a writ of mandate to set aside the Ordinance, a judicial declaration that the Ordinance is invalid and unlawful, injunctive relief to enjoin the County from enforcing the Ordinance, and such other relief that the Court deems proper.

## PARTIES

20. Plaintiff the Board of Trustees of Leland Stanford Junior University, is a private non-profit university founded in 1891. Stanford University owns over 4,000 acres of land within the unincorporated area of Santa Clara County, including the university campus. Stanford University also owns lands located in various other local jurisdictions, including the cities of Palo Alto, Menlo Park, Redwood City, Woodside, and Portola Valley and the unincorporated area of San Mateo County.

21. Defendant County of Santa Clara is a unit of government organized under the laws of the State of California.

22. Defendant Santa Clara County Board of Supervisors is the governing body of the County.

## FACTUAL ALLEGATIONS

23. In December 2000, the County approved the 2000 General Use Permit, which authorized Stanford University to build on its campus approximately 2,035,500 net new square feet of academic space and 3,018 net new housing units and beds for university students, faculty and staff. In December 2000, the County also approved the Stanford University Community Plan, which governs the development of the Stanford University campus.

24. Since the approval of the 2000 General Use Permit, Stanford University has paid more than $26 million to the County in affordable housing funds. The completion of

1    development by Stanford University as authorized under the 2000 General Use Permit is
2    anticipated to generate an additional $10-11 million in affordable housing funds for the County.
3        25.    In addition to these affordable housing funds, Stanford University constructed a
4    total of 1,011 new housing units in the County pursuant to the 2000 General Use Permit. This
5    figure does not include dormitory-style undergraduate beds on the Stanford University campus.
6        26.    Of the 1,011 non-dormitory housing units that Stanford has constructed in the
7    County pursuant to the 2000 General Use Permit, 816 units (or over 80%) have been classified by
8    the County as meeting the rental price standards for affordability for low-income and very low-
9    income households. The Housing Element of the County's General Plan has relied on these 816
10   affordable housing units constructed by Stanford University to fulfill the County's own legal
11   obligations to provide affordable housing pursuant to the requirements of State law as
12   administered by the California Department of Housing and Community Development.
13       27.    In addition to the 816 affordable housing units constructed by Stanford University
14   that the County has relied on in its Housing Element to meet its affordable housing obligations
15   under State law, Stanford's Escondido Village Graduate Residences project, approved by the
16   County in March 2016, is anticipated to add another 1,300 affordable housing units within the
17   unincorporated area of the County.
18       28.    In addition to this affordable housing totaling more 2,100 housing units, the
19   Housing Element of the County's General Plan acknowledges that while the many dormitory-
20   style student beds on the Stanford University campus are not officially counted as "housing units"
21   for purposes of determining affordability, these student beds "nonetheless make an important
22   contribution to the housing supply at Stanford University, and reduce potential pressures on the
23   housing demand in nearby communities."
24       29.    In November 2015, the County approved a contract for its consultant, Keyser
25   Marston Associates ("KMA"), to complete a set of countywide affordable housing nexus studies.
26   This effort was designed to assist the County in advancing a regional response to affordable
27   housing needs as part of a coordinated effort involving twelve local jurisdictions in the region.
28

30. In November 2016, Stanford University submitted an application to the County for a new General Use Permit for development of the Stanford University campus ("2018 General Use Permit"). This application seeks to modify the 2000 General Use Permit to allow for the development of an additional 2,275,000 net new square feet of academic space and an additional 3,150 student beds and housing units over an approximately 17-year build-out horizon. As part of its application for the 2018 General Use Permit, Stanford University committed to make payments into a County-maintained affordable housing fund, consistent with the payments it has been making since the issuance of the 2000 General Use Permit.

31. In December 2016, the County's consultant KMA completed two county-wide affordable housing studies: (i) a "Residential Nexus Analysis" to evaluate the linkage between the development of new residential units in the unincorporated County and the need for additional affordable housing; and (ii) a "Non-Residential Nexus Analysis" to evaluate the linkage between the development of new commercial and industrial building space in the unincorporated County and the need for affordable housing.

32. The County's Residential Nexus Analysis is based on the express premise that new residential development in the unincorporated area of the County represents new households, which in turn represent new income leading to the consumption of goods and services, and that this consumption will generate new jobs, including lower-wage jobs that will create increased demands for affordable housing.

33. The County's Non-Residential Nexus Analysis similarly is based on the express premise that new commercial and industrial development in the unincorporated area of the County will generate new jobs, including lower-wage jobs that will create increased demands for affordable housing.

34. The County's nexus studies did not include an assessment of affordable housing requirements for Stanford University. In a June 20, 2017 staff report presented to the Board of Supervisors, County staff proposed to conduct an analysis of the affordable housing requirements that would apply to Stanford University's future development "as part of the processing of the 2018 General Use Permit." The staff report acknowledged the possibility that, if the County were

to approve a countywide affordable housing ordinance, Stanford University would be subject to that ordinance.  However, the staff report also stated that "[i]f a countywide fee ordinance was not adopted, a Stanford University impact fee would be considered in the context of the General Use Permit application."  The staff report did not mention the possibility of a stand-alone ordinance specific to Stanford University.

35. The County has not adopted a countywide affordable housing ordinance and there currently is no proposed countywide affordable housing ordinance under consideration for adoption by the Board of Supervisors.

36. Instead, on September 25, 2018, the County adopted the Ordinance together with an affordable housing fee ordinance, both of which expressly impose affordable housing requirements only on Stanford University land.

37. Despite the prior indications by County staff, the requirements imposed on Stanford were expressly based on the amount of development specified in Stanford University's 2018 General Use Permit application, but these requirements were imposed by way of a Stanford-only ordinance process that was decided in advance of any other County decision on Stanford's development application.

38. The two County ordinances impose affordable housing requirements on Stanford University's residential development and its academic development, respectively, without imposing any affordable housing requirements on any other residential or non-residential development within the unincorporated area of the County.  Specifically, the two County ordinances apply only to development by Stanford University within the area covered by the Stanford University Community Plan.

39. The first Stanford-only ordinance is the County's "inclusionary" housing Ordinance, which requires that 16% of the residential units that are built by Stanford University in the unincorporated County for its faculty and staff meet specified affordable housing standards. See Ordinance No. NS-1200.368, which is codified in the Santa Clara County Ordinance Code, Title C, Appendix I (Zoning), Article 4, Chapter 4.20, Section 4.20.130.

40. The second Stanford-only ordinance that the County adopted on September 25, 2018, requires Stanford University to pay an affordable housing impact fee of $68.50 for each net new square foot of academic space that Stanford University develops on its campus after July 1, 2020. See County Ordinance No. NS-300.929; County Resolution No. BOS-2018-104. As with the County's inclusionary housing Ordinance directed at Stanford University's residential development, this impact fee ordinance applies only to non-residential development by Stanford University. But according to the County's own analysis, general office development generates a much higher affordable housing demand per square foot than Stanford University's academic development. This is because academic uses such as lecture and concert halls, museums, academic farms, athletic venues and gymnasia have a relatively low employment density, which means such uses necessitate fewer employees per square foot as compared to other non-residential uses. Specifically, the County's analysis calculates that Stanford University's academic uses generate only about 63% the affordable housing demand per square foot as compared to office uses in the County.

41. The impact fee ordinance is not being challenged as part of this action, as a lawsuit challenging the impact fee ordinance is subject to separate timing and filing requirements under the Mitigation Fee Act, Govt. Code §§ 60000 *et seq*.

42. As the courts have observed, when local legislation is generally applicable to a large class of landowners, it typically is subject to the constraints of the democratic process, such that inappropriate or unjust requirements imposed throughout the local jurisdiction are susceptible to widespread political opposition. In contrast, local land use requirements imposed *only* on a single landowner or development project are more likely to evade systematic assessment and escape political controls, and thus present an enhanced potential for abuse.

43. As described above, the County through its inclusionary Ordinance intentionally has imposed affordable housing requirements only on residential development by Stanford University. The County has neither adopted nor proposed any affordable housing rules that would apply to any other residential development in the unincorporated area of the County.

# CAUSE OF ACTION
**(Equal Protection – U.S. Const., Amend. XIV & Calif. Const. Art. 1, § 7(a))**

44. Stanford University realleges and incorporates the allegations in the foregoing paragraphs.

45. The Equal Protection clauses of the United States and California Constitutions protect against local legislation that irrationally singles out one entity to bear the burden of addressing its contribution to a regional problem.

46. The County has stated that the supply and affordability of housing countywide and in the region is a longstanding problem that has been growing in importance since the early 1960s, as the area has been transformed from a center of agricultural production into a center for technology, innovation and employment. It is arbitrary and irrational for the County intentionally to single out Stanford University to bear the burden of addressing its contribution to this problem alone, without imposing any affordable housing requirements on other development of new housing that is subject to the County's land use jurisdiction and authority.

47. The County's own affordable housing nexus studies are based on the key premise that *all* residential development within the unincorporated area of the County generates an increased demand for affordable housing. Yet, the County has impermissibly imposed inclusionary affordable housing requirements *only* on Stanford University and not on others who contribute to the countywide affordable housing shortage.

48. Based on all of the evidence in the administrative record of the County's proceedings in this matter, because the Ordinance, by design, exclusively targets Stanford University, and because it is irrational to treat Stanford University's residential development differently from other similarly situated residential development that according to the County's own nexus studies generates an increased demand for affordable housing, the Ordinance violates federal and state principles of Equal Protection.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Stanford University requests the Court to grant the following relief:

    a.    Declare that the County's Ordinance violates the Equal Protection clauses of the Fourteenth Amendment of the United States Constitution and Article 1, section 7(a) of the California Constitution;

    b.    Enjoin the defendants, their agents, employees, and all other persons in active concert or participation with them from enforcing the Ordinance;

    c.    Award Stanford University its reasonable attorneys' fees and costs incurred in this action pursuant to 42 U.S.C. § 1988, California Code of Civil Procedure § 1021.5, and other applicable law.

    d.    Order such other relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all issues so triable.

DATED: December 20, 2018                      **PERKINS COIE LLP**

                                                      By: /s/ *Geoffrey L. Robinson*
                                                           Geoffrey L. Robinson, Bar No. 112997

                                                        Attorneys for Plaintiff
                                                        BOARD OF TRUSTEES OF LELAND
                                                        STANFORD JUNIOR UNIVERSITY