UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SANTA CLARA, and SANTA CLARA COUNTY BOARD OF SUPERVISORS,<br><br>Defendants. | Case No. 18-cv-07650-BLF<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT; AND DISMISSING ALL CLAIMS WITH LEAVE TO AMEND**<br><br>[Re: ECF 42] |

Plaintiff Board of Trustees of Leland Stanford Junior University ("Stanford") brings suit against Defendants County of Santa Clara and the Santa Clara County Board of Supervisors (collectively, "the County") to challenge the County's Ordinance No. NS-1200.368 ("the Ordinance") adopted on September 25, 2018. The Ordinance, which applies solely to residential development on Stanford's property, requires that 16% of dwelling units in any new rental or for-sale residential development with three or more units meet certain affordable housing requirements. Stanford claims that it has been singled out to bear the burden of addressing a countywide shortage of affordable housing, despite the fact that Stanford's property comprises less than half of one percent of the land zoned for residential development in the unincorporated County. The operative first amended complaint ("FAC") asserts a class-of-one equal protection claim under 42 U.S.C. § 1983, and state law claims for writ of mandate and declaratory relief.

The County moves to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6). Having considered the briefing and the oral arguments presented at the hearing on August 8, 2019, the Court GRANTS the motion in part, and DISMISSES ALL CLAIMS WITH LEAVE TO AMEND.

## I. BACKGROUND[1]

The supply and affordability of housing have been longstanding issues in the County, particularly since the early 1960s when the area started transitioning from an agricultural center to a center for technology, innovation, and employment. FAC ¶ 4, ECF 26. The County repeatedly and consistently has recognized that the need for affordable housing is a regional problem affecting the entire County. FAC ¶ 39. The County's Zoning Code allows residential development on approximately 600,000 acres of unincorporated area in the County, including approximately 1,747 acres of land owned by Stanford ("Stanford Lands") and approximately 596,022 acres of land not owned by Stanford ("Non-Stanford Lands"). *Id*.

Development on Stanford Lands is governed by a General Use Permit ("GUP") issued by the County. The County approved a GUP in December 2000, allowing residential and academic development on the Stanford University campus. FAC ¶ 64. In November 2016, Stanford applied for a modified GUP, seeking approval for "the development of 2,275,000 net new square feet of academic space, and 3,150 net new housing units and student beds (with up to 550 of those units to be housing for Stanford faculty and staff) over an approximately 17-year build-out horizon." FAC ¶ 76. Stanford currently has a 2018 GUP Application pending. *See* 2018 GUP Applic., Defs.' RJN Exh. G, ECF 43.

Over the past two cycles for the County's Regional Housing Needs Allocation pursuant to state housing law (the 1999-2006 cycle and the 2007-2014 cycle), Stanford produced 1,324 affordable housing units, which was 75% of the total amount of affordable housing developed within the County's jurisdiction during that time frame. FAC ¶ 5. In the current cycle (the 2015-2022 cycle), Stanford is developing at least another 1,400 affordable housing units in the County's jurisdiction. *Id*. The affordable housing units described above do not include the hundreds of dormitory-style units that Stanford has built for its undergraduate students. FAC ¶¶ 68, 69. The

---

[1] The background facts are drawn from the allegations of the complaint, which are accepted as true for purposes of the motion to dismiss, *see Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011), and from documents incorporated into the complaint by reference and matters which are subject to judicial notice, *see Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016).

2

dormitory units are not counted toward the County's Regional Housing Needs Allocation because they do not technically meet the Census Bureau definition of a "housing unit." FAC ¶ 69. The County nonetheless has recognized that Stanford's dormitory units make an important contribution to the housing supply at Stanford University. *Id.* In 2018, the County Director of Planning and Development recognized that Stanford has "singlehandedly satisfied most of our Regional Housing Needs Allocation for affordable housing." FAC ¶ 74.

Stanford claims that despite its significant contributions to the development of affordable housing, the County recently decided to single out Stanford "to bear the burden of the County's efforts to remedy its affordable housing problems." FAC ¶ 59. The County enacted two ordinances that exclusively target Stanford's property and do not apply to any other property in the unincorporated County. FAC ¶ 34. The Ordinance at issue in this lawsuit "applies to any development of non-student housing within the area covered by the Stanford Community Plan, for which the development application is deemed complete on or after July 1, 2019, that would create three or more new, additional, or modified dwelling units by any of the following means, or combination thereof: (a) construction of new dwelling units; (b) conversion of a use to residential from another use; (c) conversion of a use to for-sale residential from rental residential; and (d) subdivision of land to develop residential dwelling units." FAC ¶ 16. Stanford owns the entire area covered by the Stanford Community Plan, except for two public elementary school sites and other property that has been condemned for public use, such as public rights-of-way. FAC ¶ 17. Under the Ordinance, 16% of qualifying residential units developed within the area covered by the Stanford Community Plan must meet specified affordable housing requirements. FAC ¶ 34.

The other ordinance, not at issue in this lawsuit, requires Stanford to pay an affordable housing impact fee of $68.50 for each net new square foot of academic space Stanford develops on campus after July 1, 2020. FAC ¶ 35. The impact fee ordinance is being challenged in separate proceedings. FAC ¶ 36.

According to Stanford, "[t]here is no rational basis for singling out Stanford to address a problem that the County recognizes occurs throughout the County." FAC ¶ 59. Stanford asserts that the County's conduct is particularly irrational given that Stanford has constructed more than

3

three-quarters of the affordable housing built in the entire unincorporated County since 1999. FAC ¶ 61. The County has not adopted a countywide ordinance addressing affordable housing, and no such proposed countywide ordinance is under consideration. FAC ¶ 80.

The Ordinance at issue contains a preface articulating a number of findings made by the County Board of Supervisors. *See* Ordinance, Defs.' RJN Exh. C, ECF 43. The Ordinance discusses the shortage of affordable housing in the County, the imbalance between jobs and housing in the County, data showing that significant numbers of people who work in the County live outside the County, and the impact of resulting commuter traffic on traffic congestion. *See id.* at 1-4. After several pages spent addressing the effect of these issues on the County in general, the Ordinance jumps to the specific, stating that "[t]he housing supply and affordability concerns that are experienced countywide are particularly acute at and around Stanford University due to the high housing prices in the area around Stanford that result in a small supply of affordable housing." *See id.* at 4. The Ordinance also states as follows:

> The housing supply and affordability concerns that are experienced countywide have a particularly strong effect at and around Stanford University due to the high housing prices in the area and the employment opportunities generated by Stanford. New residents of market-rate housing, including faculty and staff housing within the Stanford Community Plan Area, creates demand for new public and private sector workers. Some of these new workers earn incomes that are only adequate to pay for affordable housing. Because affordable housing is in short supply in the Stanford Community Plan Area and environs, such new workers may be forced to live in less than adequate housing in the area, pay a disproportionate share of their incomes for housing, or commute long distances to their jobs from housing located in more affordable parts of the county or outside of the region entirely.

Ordinance at 5. The Board determined that these concerns would be alleviated by the Ordinance. *Id*. at 5-6.

Stanford alleges that the countywide issues addressed in the Ordinance are not felt more acutely at and around Stanford than elsewhere in the County. *See* FAC ¶¶ 39-59. Stanford suggests that the County actually passed the two Stanford-only ordinances to obtain leverage in negotiations regarding Stanford's pending GUP application. FAC ¶¶ 76, 84. In May 2018, the County Board of Supervisors announced that the County was considering affordable housing ordinances specific to Stanford. FAC ¶ 79. Stanford objected in written correspondence to multiple County officials and agencies. FAC ¶ 81. Stanford alleges that "County officials and

4

decision-makers expressed a clear intention to get the two Stanford-only ordinances 'on the books' quickly, in order to give the County negotiating leverage to impose still greater requirements on Stanford during the process of considering its pending permit application." FAC ¶ 84. Although the County Planning Commission unanimously recommended that the County Board of Supervisors *not* adopt the Ordinance at issue in this lawsuit, the County Board of Supervisors adopted both ordinances directed toward Stanford Lands at its September 25, 2018 public meeting. FAC ¶¶ 87-88. One Supervisor commented that having the Ordinance "in your pocket" would help with negotiations with Stanford, and another commented that the Ordinance could lead to "something more attractive" down the road." FAC ¶ 88. Negotiations on Stanford's GUP Application are ongoing. FAC ¶ 89.

Stanford filed this action on December 20, 2018. *See* Compl., ECF 1. The County's Rule 12(b)(6) motion to dismiss the original complaint was mooted when Stanford filed the operative FAC. *See* Motion to Dismiss, ECF 21; FAC, ECF 26. The FAC alleges the following claims: (1) a § 1983 class-of-one equal protection claim brought under the equal protection clauses of the United States Constitution and the California Constitution; (2) a claim for writ of mandate under California Code of Civil Procedure § 1085; and (3) a claim for declaratory relief under California Code of Civil Procedure § 1060. The County seeks dismissal of all claims under Rule 12(b)(6).

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

//

//

## III. DISCUSSION

The County seeks dismissal of Stanford's § 1983 class-of-one equal protection claim (Claim 1), as well as Stanford's state law claims for writ of mandate (Claim 2) and declaratory relief (Claim 3). Stanford asserts that all three claims are adequately pled.

Before discussing the parties' arguments regarding Stanford's claims, the Court addresses the County's request for judicial notice. The Court then takes up the class-of-one equal protection claim and the state law claims.

### A. County's Request for Judicial Notice

The County has filed a request for judicial notice ("RJN") of the following documents, attached to the RJN as Exhibits A-I : (A) excerpts of the 2000 Stanford Community Plan, which the Santa Clara County Board of Supervisors adopted as an amendment to the 1995 Santa Clara County General Plan; (B) the Staff Report for the Ordinance, which was made available to the public as part of the agenda packet prior to the September 25, 2018 Board of Supervisors meeting at which the Ordinance was adopted; (C) the Ordinance at issue in this suit, which was adopted on September 25, 2018; (D) excerpts of the Zoning Ordinance of the County of Santa Clara; (E) the 1985 Land Use Policy Agreement, signed by the Board of Trustees of Leland Stanford Junior University and the County of Santa Clara; (F) a screenshot of a portion of Stanford's publicly facing web page at <https://stanfordcareers.stanford.edu/our-community>; (G) an excerpt of Stanford's 2018 General Use Permit ("GUP") Application, which Stanford has submitted to the County for approval; (H) excerpts from the Certified Transcript of the County of Santa Clara Board of Supervisor's September 25, 2018 public hearing regarding the Ordinance at issue in this lawsuit; and (I) County staff's April 18, 2018 report to the County of Santa Clara's Housing, Land Use, Environment, and Transportation Committee regarding the possibility of introducing a countywide ordinance. The County argues that all of these documents are judicially noticeable, and that some of the documents also may be considered under the incorporation by reference doctrine because they are referenced in the FAC.

Stanford opposes the RJN, arguing that the County improperly asks the Court to take judicial notice not only of the existence of the documents in question, but also of the truth of their

6

1  contents. In particular, Stanford objects to the County's reliance on statements in the documents
2  regarding the impact of Stanford's housing development under its GUP. Stanford cites Ninth
3  Circuit authority for the proposition that "[j]ust because the document itself is susceptible to
4  judicial notice does not mean that every assertion of fact within that document is judicially
5  noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).
6  In reply, the County argues that it "cited these documents to demonstrate the facial plausibility of
7  several rationales for applying the Ordinance to the Plan area," not for the truth of the facts
8  therein. Defs.' Reply at 3, ECF 49.

9  The Court concludes that judicial notice is appropriate with respect to the existence and
10 contents of all of the proffered exhibits, although not as to the truth of the facts therein. Exhibits
11 A, C, D, E, and G are public records reflecting applications to the County and/or the County's
12 official actions, *see Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025
13 n.2 (9th Cir. 2006) (taking judicial notice of city ordinances, event permit application, and
14 indemnity agreement); Exhibits B and I are government staff reports, *see Comm. for Reasonable
15 Regulation of Lake Tahoe v. Tahoe Reg'l Planning Agency*, 311 F. Supp. 2d 972, 1000 (D. Nev.
16 2004) (taking judicial notice of government staff memoranda and reports); Exhibit H is a certified
17 transcript of a public hearing, *see Epona, LLC, et al. v. Cty. of Ventura*, No. CV 16-6372 DMG
18 (PLAx), 2019 WL 4187393, at *3 n. 4 (C.D. Cal. Apr. 12, 2019) (taking judicial notice of
19 transcript of County Board meeting); and Exhibit F is a screenshot of Stanford's publicly
20 accessible website, *see Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014)
21 (taking judicial notice of publicly accessible website). The Court also may consider the Ordinance
22 under the incorporation by reference doctrine, as it is referred to throughout the FAC. *See Marder
23 v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (on a Rule 12(b)(6) motion, the court may consider
24 documents referenced in and central to the complaint, where there is not dispute as to the
25 authenticity of the copies attached to the motion).

26 With the limitations set forth above, the County's RJN is GRANTED.

### B.     Class-of-One Equal Protection Claim (Claim 1)

28 In Claim 1, Stanford asserts a class-of-one equal protection claim under § 1983, based on

7

asserted violations of the equal protection clauses of the United States Constitution and the California Constitution. The same legal standards apply to claims brought under the equal protection clauses of the federal and state constitutions. *See Wal-Mart Stores, Inc. v. City of Turlock*, 483 F. Supp. 2d 987, 1010 (E.D. Cal. 2006); *see also RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154 (9th Cir. 2004) ("The equal protection analysis under the California Constitution is 'substantially similar' to analysis under the federal Equal Protection Clause.").

The Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To succeed on a class-of-one claim, the plaintiff must show that the defendant "(1) intentionally (2) treated [the plaintiff] differently than other similarly situated property owners, (3) without a rational basis." *Gerhart v. Lake Cty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011).

The County contends that Stanford's class-of-one claim is subject to dismissal because Stanford has not identified any similarly situated property owner that was treated differently by the County; Stanford has not alleged facts showing that there is no rational basis for the County's adoption of the Ordinance; and the Ordinance does not target Stanford specifically but rather applies neutrally to the Stanford Community Plan area. Stanford argues that it has alleged facts sufficient to make out a class-of-one equal protection claim.

### 1. Similarly Situated

The County contends that Stanford has not pled facts sufficient to satisfy the similarly situated prong. The Ninth Circuit cases cited by the parties do not offer substantial guidance on what types of facts are needed to satisfy the similarly situated requirement. *See, e.g., Gerhart*, 637 F.3d at 1022-24; *RUI One*, 371 F.3d at 1154-56. However, several district courts within the Ninth Circuit have followed the Second Circuit in concluding that "[c]lass-of-one plaintiffs 'must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'" *Warkentine v. Soria*, 152 F. Supp. 3d 1269, 1294 (E.D. Cal. 2016) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)); *see also Jardine-Byrne v. Santa*

8

*Cruz Cty.*, No. 5:16-CV-03253-EJD, 2017 WL 5525900, at *4 (N.D. Cal. Nov. 17, 2017) (same); *Scocca v. Smith*, No. C-11-1318 EMC, 2012 WL 2375203, at *5 (N.D. Cal. June 22, 2012) (same). "To be considered similarly situated, the plaintiff and her comparators must be *prima facie* identical in all relevant respects or directly comparable in all material respects." *Jardine-Byrne*, 2017 WL 5525900, at *4 (internal quotation marks and citation omitted). "Strict enforcement of the similarly-situated requirement is a vital way of minimizing the risk that, unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Warkentine*, 152 F. Supp. 3d at 1294 (internal quotation marks and citation omitted).

The County correctly asserts that the FAC does not identify a single similarly situated comparator as required under the standards set forth above. Instead, the FAC contains general allegations such as the following: "Non-Stanford Lands where housing may be built are similarly situated to Stanford Lands where housing may be built," FAC ¶ 18; "Non-Stanford Lands are zoned for the same types of housing allowed on Stanford Lands," FAC ¶ 18; "For affordable housing purposes, no relevant differences exist between this allowable multi-family residential development on Stanford Lands and on Non-Stanford Lands, FAC ¶ 24; "Non-Stanford Lands where housing development may occur includes properties that are adjacent to and near Stanford University," FAC ¶ 25. Stanford also describes 860 acres located immediately adjacent to Stanford University, alleging that those lands are zoned for single-family residential development. *See* FAC ¶¶ 26-29. While these allegations indicate that housing development *could* occur on properties adjacent to Stanford University, they do not indicate that any property owner intends to undertake such development. "It is inadequate merely to point to nearby parcels in a vacuum and leave it to the municipality to disprove conclusory allegations that the owners of those parcels are similarly situated." *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007).

Stanford points to allegations in the FAC that the County's Housing Element contains data indicating that 512 units will be built on Non-Stanford Lands for the 2015-2022 period, including 416 single family dwellings. *See* FAC ¶ 31. Stanford alleges that it has proposed development of

9

approximately the same number of units (550 units) as part of its pending application. *See* FAC ¶ 32. According to Stanford, that these allegations show that numerous landowners comparable to Stanford exist. *See* Pl.'s Opp. at 12 (citing ¶¶ 30-32 in support of assertion that "[t]he FAC further alleges that the County's land use regulations and its General Plan Housing Element show that numerous such landowners exist."). However, Stanford has not alleged any facts indicating whether the 512 housing units on Non-Stanford lands will be developed by a single developer or hundreds of different developers. Stanford has not cited, and the Court has not discovered, any case suggesting that Stanford may satisfy the similarly situated prong by pointing to an amalgam of all planned construction on Non-Stanford Lands rather than by identifying "other similarly situated property owners." *Gerhart*, 637 F.3d at 1022.

Stanford argues that it need not identify any particular comparator to satisfy the similarly situated prong at the pleading stage, asserting that *Warkentine* and *Cordi-Allen* do not apply because they were decided on summary judgment, not on a motion to dismiss. *See Cordi-Allen*, 494 F.3d at 255 (holding that "the district court did not err in entering summary judgment for the Town on the equal protection claim"); *Warkentine*, 152 F. Supp. 3d at 1294 (finding that "no reasonable trier of fact would find that Plaintiffs are similarly-situated to the Towing Defendants in the necessary material respects"). While Stanford's statement regarding the procedural posture of *Warkentine* and *Cordi-Allen* is accurate, both *Jardine-Byrne* and *Scocca* were decided at the pleading stage by courts in this district which required specific, non-conclusory allegations identifying a comparator in order to defeat a motion to dismiss. *See Jardine-Byrne*, 2017 WL 5525900, at *4 (dismissing a library patron's class-of-one equal protection claim based on conclusion that her allegations "are conclusory and fail to establish that the other Library patrons were identical in all relevant respects to Plaintiff or directly comparable in all material respects."); *Scocca*, 2012 WL 2375203, at *6 ("Mr. Scocca has failed to state a plausible equal protection claim because he has simply stated in conclusory terms that he is similarly situated with the seventy persons who have been licensed."). Other district courts within the Ninth Circuit likewise have required identification of a comparator at the pleading stage. *See, e.g., Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*, 935 F. Supp. 2d 968, 984 (E.D. Cal. 2013) ("Instead

of asserting generally that they were treated differently, plaintiffs have described two other operators who were treated differently as to the salient characteristics. This is sufficient.").

Stanford relies on Seventh Circuit cases holding that "Plaintiffs alleging class-of-one equal protection claims do not need to identify specific examples of similarly situated persons in their complaints." *Capra v. Cook Cty. Bd. of Review*, 733 F.3d 705, 717 (7th Cir. 2013); *Geinosky v. City of Chicago*, 675 F.3d 743, 748 n.3 (7th Cir. 2012) ("Even in a case where a plaintiff would need to identify a similarly situated person to prove his case . . . we see no basis for requiring the plaintiff to identify the person *in the complaint*."). The Seventh Circuit cases relied on by Stanford is at odds with the approach taken by district courts within the Ninth Circuit, as discussed above. This Court therefore declines to follow the Seventh Circuit decisions.

Stanford's reliance on *Fry v. City of Hayward*, 701 F. Supp. 179 (N.D. Cal. 1988), is misplaced. In *Fry*, the owner of property zoned as "open space" brought an equal protection suit against the City of Hayward after voters enacted a measure restricting her ability to re-zone her property absent voter approval. *Id*. at 180. No other property within the City was subject to the requirement of voter approval to change its zoning designation. *Id.* The district court granted summary judgment for the plaintiff after concluding that the City had "failed to offer even a theoretical reason" for treating the plaintiff's property differently and that the measure was "not rationally related to a legitimate interest." *Id.* at 182. The court did not engage in any substantive discussion of the similarly situated prong, and it appears that the City conceded that issue. *See id.* ("The City concedes, and the record reflects, that Hayward contains many other parcels of open space property."). Stanford's argument that *Fry* stands for the proposition that the similarly situated prong may be satisfied by allegations comparing land parcels is not persuasive given the lack of substantive discussion addressing that issue.

After reviewing the authorities cited by the parties, the Court concludes that Stanford must plead facts showing the existence of one or more comparators in order to defeat a motion to dismiss. The County asserts that Stanford cannot do so on the facts of this case, because no other entity is developing housing at the pace and scope of Stanford, and it requests that Stanford's equal protection claim be dismissed without leave to amend. In response, Stanford argues that

11

differences between its size and development impacts and those of other property owners are immaterial. Stanford's counsel also indicated at the hearing that if given leave to amend, Stanford may be able to break down its broader development plan into smaller construction projects for which it could identify comparators on Non-Stanford Lands. *See* Hrg. Tr. 24:7-25, ECF 55. The Court cannot evaluate the adequacy of any potential comparator unless and until Stanford identifies one in its pleading. Given that this is the first opportunity the Court has had to evaluate Stanford's allegations, the Court concludes that leave to amend is appropriate to give Stanford the opportunity to allege the existence of a similarly situated comparator.

Accordingly, the motion to dismiss Claim 1 is GRANTED WITH LEAVE TO AMEND on this basis.

### 2. Rational Basis

The County also contends that Stanford has not pled facts sufficient to satisfy the rational basis prong of a class-of-one claim. "[O]n rational basis review, the burden is on plaintiffs to negate 'every conceivable basis' which might have supported the distinction between exempt and nonexempt entities." *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1086 (9th Cir. 2015). Thus, "to survive a motion to dismiss, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *A.J. California Mini Bus, Inc. v. Airport Comm'n of the City & Cty. of San Francisco*, 148 F. Supp. 3d 904, 918 (N.D. Cal. 2015).

The County argues that the FAC does not negate the plausible rationales for the Ordinance that appear on its face, let alone 'every conceivable basis' which might have supported treating Stanford differently. As discussed above, the Ordinance contains the Board of Supervisors' findings regarding the countywide affordable housing shortage, followed by the Board's finding that "[t]he housing supply and affordability concerns that are experienced countywide have a particularly strong effect at and around Stanford University." *See* Ordinance at 1-5, Defs.' RJN Exh. C, ECF 43. The Board determined that these concerns would be alleviated by the Ordinance. *Id*. The County asserts that additional rationales for the Ordinance are apparent from the documents attached to its RJN. For example, the County cites to statements made at the

12

September 25, 2018 Board of Supervisors hearing that the Stanford Community Plan Area is the largest job-generating area in the County, and that Stanford is the root of the job-housing imbalance in the County. *See* Sept. 25, 2018 Hrg. Tr. at 8-9, 41-42, Defs.' RJN Exh. H, ECF 43. The County also relies on a statement in the Stanford Community Plan that "Stanford lands represent one of the most important opportunities in the County to improve the balance between jobs and housing, due to the potential to provide housing on Stanford lands." Stanford Community Plan at 38, Defs.' RJN Exh. A. Additionally, the County directs the Court's attention to the staff report that accompanied the Ordinance, which stated that the Ordinance is necessary to mitigate Stanford's planned growth. *See* Staff Report at 4, Defs. RJN Exh. B.

In opposition to the motion, Stanford correctly argues that the Court cannot take judicial notice of the truth of these statements. See *Khoja*, 899 F.3d at 999. Stanford also contends that it has alleged facts which, if accepted as true, negate the County's proffered rationales. Stanford points to allegations in the FAC citing the County's findings regarding the countywide nature of the affordable housing shortage. *See* FAC ¶¶ 39-47. For example, a November 2015 County staff report indicated that newly constructed housing units in the unincorporated County represent net new households in the County, which represent new disposable income that will be devoted to new consumption, which in turn will generate new local jobs at lower compensation levels, which will lead to a need for more affordable housing. FAC ¶ 47. The County hired a consultant, Keyser Marston Associates, Inc. ("KMA"), which completed a countywide affordable housing study in 2016 linking the development of new residential units in the unincorporated County with increased need for affordable housing. *See* FAC ¶¶ 45-46. A second countywide study linked the development of new commercial and industrial building space with the need for affordable housing. *See* FAC ¶ 48. A report published by the Civil Grand Jury of Santa Clara County in June 2018 concluded that Santa Clara County has a critical need for affordable housing, characterizing that need as a region-wide problem. *See* FAC ¶ 49. The Ordinance at issue in this suit recognizes the longstanding and regionwide nature of the County's affordable housing need. *See* FAC 50. Stanford points out that none of these sources suggest or support the notion that the affordable housing shortage is specific to Stanford, more critical at Stanford, or caused by

13

Stanford.

Stanford emphasizes that the question presented by its class-of-one claim is not whether the County had a rational basis for attempting to address affordable housing issues through an ordinance, but whether the County had a rational basis for singling out Stanford. *See Gerhart*, 637 F.3d at 1023 ("We have recognized that the rational basis prong of a 'class of one' claim turns on whether there is a rational basis for the *distinction*, rather than the underlying government action."). Stanford contends that the allegations of the FAC establish that the factors causing increased need for affordable housing exist throughout the unincorporated County and are not specific to Stanford. *See* FAC ¶ 58-59. As a result, Stanford claims, "[t]here is no rational basis for singling out Stanford to address a problem that the County recognizes occurs throughout the County." FAC ¶ 59. The FAC alleges that burdening Stanford Lands, but not other lands within the unincorporated County, is particularly irrational given that Stanford Lands comprise less than 0.5% of the acreage on which residential development can occur under the County's Zoning Code, yet Stanford has constructed more than 75% of all affordable housing units in the County since 1999. *See* FAC ¶¶ 5, 13, 61. The FAC also asserts that the irrationality of the Ordinance is demonstrated by the fact that the County's own Planning Commission unanimously recommended that the County Board of Supervisors *not* adopt the Ordinance, and the FAC suggests that the County nonetheless did so to gain leverage in negotiations with Stanford. *See* FAC ¶¶ 84, 87-89.

The Court concludes that the facts alleged in the FAC, if proved, would establish that the need for affordable housing is not more acute at or around Stanford than in other parts of the unincorporated County, and that the factors causing increased need for affordable housing are not more prevalent at or around Stanford than in other parts of the unincorporated County. Stanford argues that, like the plaintiffs in *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1509 (9th Cir. 1990), it should be permitted to go forward on its claim that the County irrationally singled it out to bear the burden of remedying a regional problem. In *Del Monte Dunes*, the plaintiff landowners sued the City of Monterey after the City denied their application to develop ocean-front property. The City required as a condition of development that the plaintiffs meet certain environmental and access conditions that had not been imposed with respect

14

to development of surrounding properties. *See id.* at 1508. The plaintiffs alleged that the City's intent was to limit use and development of the plaintiffs' property so as to create a "butterfly park" that might bring back the Smith's Blue Butterfly to the area. *Id*. at 1509. The Ninth Circuit reversed the district court's grant of summary judgment for the City on the plaintiffs' equal protection claim, holding that "Although the objective of preserving a habitat for the Smith's Blue Butterfly is rational, it may not be rational to single out this parcel to provide it." *Id*. The Ninth Circuit concluded that genuine issues of material fact remained to be determined and remanded to the district court. *See id.*

The County argues that Stanford's reliance on *Del Monte Dunes* is misplaced, as the Ninth Circuit later clarified that its holding in that case was based on the City's failure to offer a rationale for distinguishing between the plaintiffs and other landowners. Specifically, the Ninth Circuit observed that "*Del Monte* did not hold that the City violated the equal protection clause, but rather that summary judgment in favor of the City was improper because it never offered a rationale for the regulation." *Bd. of Nat. Res. of State of Wash. v. Brown*, 992 F.2d 937, 944 (9th Cir. 1993). The Ninth Circuit went on to state that "[a]t most, *Del Monte* stands for the unremarkable proposition that a municipal land use regulation might violate the equal protection clause if there exists no rational basis to justify the regulation." *Id*. The County argues that *Del Monte* has no application here, because the County has proffered numerous rational bases for the Ordinance. The Court is not persuaded that the factual distinction identified by the County renders *Del Monte* irrelevant. In *Del Monte*, as here, the contention was that local government required one landowner among many to shoulder the burden of solving a broader regional problem when there was no rational basis for the differential treatment. While the County in the present case has proffered bases for the differential treatment – for example, that the housing shortage issues are more acute at and around Stanford or that the Ordinance will mitigate Stanford's own planned growth – Stanford has alleged facts disputing the County's proffered bases. The Court cannot resolve those factual disputes on a motion to dismiss.

The County asserts that it nonetheless is entitled to dismissal of Stanford's equal protection claim based on its incremental approach to the affordable housing shortage. The County points

15

out that "Stanford does not dispute the existence of a countywide housing crisis." Defs.' Reply at 13, ECF 49. The County argues that "[r]egardless of whether it is worse in the Plan area or not, the County is allowed to respond, as it has here, to just one part of that crisis while deferring a countywide response." *Id*. This is perhaps the most difficult hurdle for Stanford to overcome with respect to its equal protection claim. The County is correct that both the Supreme Court and the Ninth Circuit have made clear that "the legislature must be allowed leeway to approach a perceived problem incrementally." *Beach Commc'ns*, 508 U.S. at 316; *see also RUI One*, 371 F.3d at 1155. The County argues that the present case is analogous to others in which the courts held that the rational basis requirement was met by legislation addressing only part of the perceived problem.

For example, in *RUI One*, an employer sued the City of Berkeley to challenge the constitutionality of an amendment to the City's living wage ordinance to cover certain employers in the Berkeley Marina ("Marina Amendment"). *See RUI One*, 371 F.3d at 1145. The Marina Amendment added "[e]ntities within the boundaries of the Marina Zone which employ six (6) or more employees and generate $350,000 or more in annual gross receipts, to the list of employers required to comply with the minimum wage, leave, and health benefit provisions of the living wage ordinance." *Id*. (internal quotation marks and citation omitted). RUI One, an employer covered under the Marina Amendment, claimed that the amendment effectively targeted only a handful of employers – between one and five – in violation of its equal protection rights. *Id*. at 1154. The district court granted summary judgment for the City, which was affirmed by the Ninth Circuit. *See id.* at 1156.

In addressing the rational basis prong of the equal protection claim, the Ninth Circuit quoted extensively from the "Findings" section of the Marina Amendment, articulating the City's determinations that the privilege of using Public Trust tidelands should not be extended to businesses that will exacerbate problems associated with inadequate compensation for workers; employers who operate on Public Trust land enjoy a unique location and amenities affording them significant financial benefits, which should be used to provide employees with a living wage and health care benefits; and the public interest is served by ensuring that people are not deterred from

16

visiting the Public Trust tidelands because they do not wish to patronize businesses that do not pay their employees a living wage or provide them with health care benefits. *See RUI One*, 371 F.3d at 1154-55. The Ninth Circuit held that those reasons provided a rational basis "for the City to treat larger Marina businesses differently from their competitors outside the Marina." *Id*. at 1156.

The Ninth Circuit also found that the City's decision to differentiate between Marina businesses and similar businesses elsewhere in the City was permissible under Supreme Court authority that "[s]uch legislative decisions are 'virtually unreviewable, since the legislature must be allowed leeway to approach a perceived problem incrementally.'" *Id*. at 1155 (quoting *Beach Commc'ns*, 508 U.S. at 316). The Ninth Circuit stated that "[r]eform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others." *Id*. (internal quotation marks and citation omitted).

In another case cited by the County, *Angelotti*, medical providers and vendors challenged a state law imposing an activation fee for each pending workers' compensation lien they had filed. It was undisputed that California's workers' compensation system was overwhelmed by a substantial backlog of such liens, as workers' compensation courts lacked the capacity to handle all lien disputes. *See Angelotti*, 791 F.3d at 1079. California addressed the "lien crisis" by enacting a statute imposing a $100 activation fee for all pending liens filed prior to January 1, 2013, and a $150 filing fee for all liens filed on or after January 1, 2013. *Id*. Any lien for which the activation fee was not paid was subject to dismissal by operation of law. *Id*. The stated purpose of the statute was to provide a disincentive to file frivolous liens. *Id*. The plaintiffs asserted an equal protection claim based on the statute's exemption of certain entities other than the plaintiffs from having to pay the lien activation fee. *Id*. at 1085. The district court denied the defendants' motion to dismiss the equal protection claim and granted the plaintiffs' motion for preliminary injunction on the claim. *Id*. at 1087-88. The Ninth Circuit reversed the ruling on the motion to dismiss and vacated the preliminary injunction. *Id*. at 1088.

The Ninth Circuit found that "[t]he Legislature's approach [ ] is consistent with the principle that the legislature must be allowed leeway to approach a perceived problem

17

incrementally." *Angelotti*, 791 F.3d at 1085. The Ninth Circuit reasoned that "[t]argeting the biggest contributors to the backlog – an approach that is both incremental, and focused on the group that 'most frequently' files liens – is certainly rationally related to a legitimate policy goal." *Id*. at 1086. Rejecting the district court's reasoning that a statute aimed at clearing only part of the backlog made "little sense," the Ninth Circuit found that such reasoning "denies the Legislature the leeway to tackle the lien backlog piecemeal, focusing first on a source of liens that it could have rationally viewed as the biggest contributor to the backlog." *Id*.

Stanford points out that both *RUI One* and *Angelotti* appear to have been decided on a more developed factual record than exists here. *RUI One* was decided on summary judgment and in *Angelotti* a motion for preliminary injunction was before the district court as well as a motion to dismiss. *Beach Commc'ns*, also cited by the County, similarly appears to have been decided on a developed record following proceedings before the Federal Communication Commission. *See Beach Commc'ns*, 508 U.S. at 311-313 (discussing agency proceedings, including proceedings on remand for development of additional legislative facts). Stanford argues that it would not be appropriate for this Court to make the same kind of rational basis determination regarding the incremental approach in the present case, which is at only the motion to dismiss stage.

While the Court agrees with Stanford that *RUI One*, *Angelotti*, and *Beach Commc'ns* were decided on more developed factual records, that does not speak to Stanford's pleading burden to allege that the County lacked a rational basis for the differential treatment. The Ninth Circuit has made clear that "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it," and that where a plaintiff fails to meet that burden at the pleading stage the complaint is subject to dismissal under Rule 12(b)(6). *Aleman v. Glickman*, 217 F.3d 1191, 1201 (9th Cir. 2000) (internal quotation marks and citation omitted) (affirming Rule 12(b)(6) dismissal of equal protection claim based on plaintiff's failure to show lack of rational basis for statutory classification). Under the authorities discussed above, the County has discretion to take an incremental approach to a perceived problem, and an incremental approach can constitute a rational basis for an ordinance that targets some but not all contributors to the problem. Stanford's FAC does not address the County's discretion to take an incremental

18

1 approach to the countywide affordable housing shortage or offer any explanation why it was not

2 rational for the County to take such an approach in this case with passage of the Ordinance.

3 Consequently, while further development of the factual record may be necessary to resolve the

4 rational basis inquiry if and when Stanford meets its pleading burden, Stanford's FAC as presently

5 framed does not meet that burden.

6 Accordingly, the motion to dismiss Claim 1 based on the rational basis prong is

7 GRANTED WITH LEAVE TO AMEND.

### 3. Neutral Application of Ordinance in Stanford Community Plan Area

The County argues that Stanford's equal protection claim is fatally flawed for an additional reason, namely, because the Ordinance does not target Stanford as an entity but rather applies neutrally to the Stanford Community Plan Area. The cases cited for this proposition are distinguishable.

In *Oxford Bank & Tr. & Fifth Ave. Prop. Mgmt. v. Vill. of La Grange*, 879 F. Supp. 2d 954, 968 (N.D. Ill. 2012), the defendant village amended its zoning ordinance to prohibit pawn shops in the area encompassing the village's central business district. The plaintiffs were landowners who had leased property within the central business district to an individual who planned to open a pawn shop there. *Id*. at 961. The district court granted summary judgment for the village on the plaintiff's class-of-one claim, in part because "the zoning amendment did not apply only to the plaintiffs, but equally to all property owners in the Village." *Id*. at 968. In contrast, the Ordinance in the present case does not apply to all property owners in the County, but only to property owned by Stanford. The fact that the Ordinance would apply equally to anyone who purchased lands within the Stanford Community Plan Area does not render the Ordinance "neutral," as there is no indication on this record that Stanford intends to sell any appreciable portion of those lands. In *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 541 (7th Cir. 2008), the challenged ordinance applied to all large-scale service stations within a particular zone, and was not targeted at and limited to lands owned by a particular entity.

As neither of the cited cases supports dismissal of Stanford's equal protection claim on the basis that the Ordinance is "neutral," the motion to dismiss Claim 1 on that basis is DENIED.

**C. State Law Claims for Writ of Mandate and Declaratory Relief (Claims 2, 3)**

In Claim 2, Stanford seeks a writ of mandate vacating and setting aside the Ordinance based on Stanford's contention that it is arbitrary, capricious, and lacking in evidentiary support. In Claim 3, Stanford seeks declaratory relief regarding its contention that the Ordinance is invalid and unlawful. Both claims appear to be grounded entirely in Stanford's equal protection claim, Claim 1, and neither party suggests differently. Accordingly, because Claim 1 is subject to dismissal with leave to amend, Claims 2 and 3 are as well.

The motion to dismiss Claims 2 and 3 is GRANTED WITH LEAVE TO AMEND.

**IV. ORDER**

(1) The County's motion to dismiss is GRANTED IN PART AND DENIED IN PART, as discussed above, and all claims are DISMISSED WITH LEAVE TO AMEND;

(2) Any amended pleading shall be filed on or before October 31, 2019; and

(3) Leave to amend is limited to the deficiencies addressed herein, and Stanford may not add new parties or claims without obtaining express leave of Court.

Dated: October 10, 2019

BETH LABSON FREEMAN
United States District Judge